**HEARING DATE: February 21, 2008, at 10:00 A.M. (Eastern time)**
**OBJECTION DEADLINE: February 15, 2008, at 4:00 P.M. (Eastern time)**

Luc A. Despins (LD 5141)
Andrew M. Leblanc (*pro hac vice*)
Jessica L. Fink (JF 6399)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Counsel for Alper Holdings USA, Inc.,
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------x
In re:                       :   Chapter 11
                             :
ALPER HOLDINGS USA, INC.,    :   Case No. 07-12148 (BRL)
                             :
                             :
                   Debtor.   :
----------------------------x
```

### NOTICE OF HEARING ON OBJECTION OF ALPER HOLDINGS USA, INC. TO HARRY HOLT PLAINTIFFS' PROOFS OF CLAIM

PLEASE TAKE NOTICE that a hearing will be held before the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004, on **February 21, 2008, at 10:00 a.m.** (Eastern time), or as soon thereafter as counsel may be heard, to consider the relief requested in the objection, dated January 9, 2008, of Alper Holdings USA, Inc. to proofs of claim number 35, 36, 37, 38, 39,

40, 41, 42, 43, 44, and 45 filed by the Harry Holt Plaintiffs[1]

(the "Objection").

　　　　　PLEASE TAKE FURTHER NOTICE THAT responses or

objections, if any, to the Objection and the relief requested

therein shall be made in writing, shall state with particularity

the grounds therefor, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Rules of the Bankruptcy

Court, and shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (General

Order M-242 and the User's Manual for the Electronic Case Filing

System can be found at www.nysb.uscourts.gov, the official

website for the Bankruptcy Court), by registered users of the

Bankruptcy Court's case filing system and, by all other parties

in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), Wordperfect or any other Windows-based word

processing format, with a courtesy hard copy to Chambers,

Alexander Hamilton Customs House, One Bowling Green, New York,

New York 10004, on or before **February 15, 2008, at 4:00 p.m.**

(Eastern time), and serving such objection on: (i) Alper

Holdings USA, Inc., 245 Park Avenue, 24th Floor, New York, New

York 10137 (Attn: Robert Bertellotti); (ii) Milbank, Tweed,

---

[1]　　　The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt,
Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt,
Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and
David Brown (collectively, the "Harry Holt Plaintiffs").

Hadley and M<sup>c</sup>Cloy LLP, One Chase Manhattan Plaza, New York , New

York 10005 (Attn: Luc A. Despins, Esq. and Jessica L. Fink,

Esq.), counsel for Alper; and (iii) the Office of the United

States Trustee for the Southern District of New York, 33

Whitehall Street, 21st floor, New York, New York 10004 (Attn:

Alicia Leonhard, Esq.), so as to be actually received by such

filing deadline.


Dated:   New York, New York
         January 9, 2008

**MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**

By: /s/ Luc A. Despins
    Luc A. Despins (LD 5141)
    Jessica L. Fink (JF 6399)
    1 Chase Manhattan Plaza
    New York, New York  10005
    (212) 530-5000

    Counsel for Alper Holdings USA, Inc.,
    Debtor and Debtor in Possession

Luc A. Despins (LD 5141)
Andrew M. Leblanc (*pro hac vice*)
Jessica L. Fink (JF 6399)
MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Counsel for Alper Holdings USA, Inc.,
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------x
In re:                          :    Chapter 11
                                :
ALPER HOLDINGS USA, INC.,       :    Case No. 07-12148 (BRL)
                                :
                                :
                    Debtor.     :
----------------------------x

## OBJECTION OF ALPER HOLDINGS USA, INC. TO HARRY HOLT PLAINTIFFS' PROOFS OF CLAIM

Alper Holdings USA, Inc. ("Alper"), debtor and debtor

in possession in the above-captioned chapter 11 case, files this

objection (the "Objection"), pursuant to section 502 of title 11

of the United States Code, 11 U.S.C. §§ 101-1532 (as amended,

the "Bankruptcy Code") and rule 3007 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") to proofs of claim

numbered 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45

(collectively, the "Proofs of Claim" or the "Harry Holt Claims")[1]

---
[1]    A schedule listing the Proofs of Claim is attached as Exhibit A
       to the Declaration of Jessica L. Fink in Support of Objection
       ("Fink Decl.") filed simultaneously herewith.

filed by the Harry Holt Plaintiffs,[2] and respectfully represents as follows:

## **Preliminary Statement**

1.    On or about December 3, 2003, the Harry Holt Plaintiffs filed a complaint against Saltire, Alper, Ebbtide Corporation, the County of Dickson, Tennessee, and the City of Dickson, Tennessee (as amended, the "Complaint", Exhibit B to the Fink Decl.), thereby commencing the litigation that forms the basis of the Harry Holt Claims (the "Harry Holt Action"). In the Complaint and subsequent amendments the Harry Holt Plaintiffs allege that Alper's former subsidiary, Saltire Industrial, Inc. ("Saltire"), negligently disposed of industrial waste generated at the plant it operated in Dickson County, Tennessee (the "Dickson Plant"), at the landfill located in Dickson County and owned and operated by the City of Dickson and County of Dickson (the "Dickson Landfill") and at other locations in the County including the Dickson Plant.  The Harry Holt Plaintiffs further allege that their domestic water supply came from a groundwater well, located approximately 500 feet from the Dickson Landfill, that was contaminated with Trichlororethane ("TCE"), a product used at the Dickson Plant.

---

[2]    The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Harry Holt Plaintiffs").

2.   Both the Complaint and the Harry Holt Claims allege that Alper is the alter ego of Saltire Industrial, Inc. ("Saltire") (formerly known as Scovill, Inc.) and that Alper "diverted Scovill-Saltire's assets in such a manner as to leave Scovill-Saltire grossly undercapitalized."  The Harry Holt Plaintiffs contend, therefore, that Alper is responsible for alleged damages incurred as a result of the "wrongful conduct" of Saltire.  Additionally, the Harry Holt Plaintiffs assert for the first time in the Proofs of Claim that Alper is liable for their claims because Alper (i) is the successor in interest to First City Industries Inc. ("First City") and is therefore liable for all the obligations of First City; and (ii) diverted assets away from Scovill-Saltire and assigned assets of First City to Alper as part of a calculated strategy to fraudulently place assets outside the reach of the Harry Holt Plaintiffs.

3.   However the Harry Holt Plaintiffs try to articulate their claims, they must be disallowed.  To the extent the Harry Holt Plaintiffs are asserting derivative claims against Alper, the Harry Holt Claims fail because Saltire specifically released any claims – including alter ego claims and claims for fraudulent transfer – against Alper pursuant to Saltire's confirmed plan of reorganization.  Alternatively, if the Harry Holt Plaintiffs attempt to assert direct claims against Alper, the Harry Holt Claims fail because Alper had no

3

connection to Saltire until many years after the alleged disposal of industrial wastes in Dickson County. The clear and unequivocal release in the Saltire plan of reorganization, coupled with the undisputed operational history of the Dickson Plant which makes it impossible to assert any facts to support their claims, is fatal to the Harry Holt Plaintiffs' effort to extract damages from an innocent corporate party.

4.    Accordingly, Alper hereby objects to the 11 unliquidated claims asserted by the Harry Holt Plaintiffs, each in the approximate unliquidated amount of $40,000,000 and respectfully submits that this Court should disallow and expunge the Proofs of Claim filed by the Harry Holt Plaintiffs.

## Jurisdiction

5.    This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### Alper's Bankruptcy

6.    On July 13, 2007 (the "Petition Date"), Alper commenced its case under chapter 11 of the Bankruptcy Code. Alper continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of Bankruptcy Code.

4

7.    On July 25, 2007, this Court entered an order establishing September 21, 2007 as the deadline for filing proofs of claim by Alper's known creditors.  Notice of the deadline was provided by mail to all known creditors and published in *The New York Times* (National Edition), *The Nashville Tennessean* and *The Dickson Herald.*

## Proofs of Claim

8.    On or about December 3, 2003, the Harry Holt Plaintiffs filed the Complaint,[3] thereby commencing the Harry Holt Action.[4]  In the Complaint, the Harry Holt Plaintiffs allege

---

[3]    <u>Harry Holt, et al. v. Saltire Industries, Inc., et al.</u> was originally docketed at case number CV-1882 on the docket of the Circuit Court of Dickson County, Tennessee.  On May 25, 2006, the liquidating trustee for Saltire filed a motion to transfer the Harry Holt Action to the United States District Court for the Southern District of New York.  After several considerations and oral argument, the Court in the Southern District of New York transferred the case to the United States District Court for the Middle District of Tennessee and docketed at case number 07-00727.

[4]    Five other actions related to disposal of industrial waste in Dickson, Tennessee were filed by numerous parties (collectively, the "<u>Tennessee Actions</u>"), and include: (1) Armstrong v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc f/k/a Schrader Automotive, Inc.; Alper Holdings U.S.A., Inc.; Tomkins PLC; ArvinMeritor, Inc.; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "<u>Armstrong Action</u>"); (2) Flake v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc. f/k/a Schrader Automotive, Inc.; Alper Holdings USA, Inc.; Tomkins PLC; City of Dickson, Tennessee; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "<u>Flake Action</u>"); (3) Adkins v. Schrader-Bridgeport International, Inc.; Alper Holdings USA, Inc.; ArvinMeritor, Inc; City of Dickson Tennessee; County of Dickson Tennessee; William Andrews; Lewis Kilmarx and John Does (the "<u>Adkins Action</u>" and collectively with the Armstrong Action and the Flake Action, the "<u>Dickson Actions</u>")); (4) Lavenia Holt, <u>et al.</u> v. Scovill, Inc. <u>et al</u> (the "<u>Lavenia Holt Action</u>"); and

that Alper is liable to the Harry Holt Plaintiffs "as the alter-ego of Scovill-Saltire . . . for the wrongful conduct of Scovill-Saltire."  See Complaint, Exhibit B to the Fink Decl., at ¶ 15 ("Alper is the alter ego of and controls the assets of Saltire, and has diverted Saltire's assets in such a manner as to leave Saltire grossly undercapitalized").[5]  Notably, little progress has been made in the litigation and the case was all but dormant until just recently.[6]

    9.    On September 21, 2007, each of the 11 Harry Holt Plaintiffs filed a proof of claim asserting unliquidated personal injury and property damage claims, each in the amount of $40,000,000.  In the Proofs of Claim, the Harry Holt Plaintiffs assert that Alper is liable for their claims because Alper (i) fraudulently diverted assets away from Saltire while acting as its alter ego and (ii) is the successor in interest to

---

[5] Dunbar v. Saltire Industrial, f/k/a Scovill, Inc. et al., pending in the Circuit Court of Dickson County, Tennessee (the "Dunbar Action").  Plaintiffs in the Dunbar Action and the Lavenia Holt Action did not serve Alper and have not filed a claim in Alper's case.  Alper was dismissed as a defendant in the Dickson Actions shortly after the Petition Date.  To the extent that any of the plaintiffs in the Tennessee Actions have filed claims against Alper, Alper intends to object to those claims.

[5] Saltire's "wrongful conduct" allegedly includes trespass, battery, permanent nuisance, negligence, and punitive damages, all related to Saltire's alleged negligent disposal of waste at the Dickson Landfill.

[6] Notably, Alper served discovery requests on the Harry Holt Plaintiffs on March 3, 2005, which the Harry Holt Plaintiffs never answered.

First City as a result of First City's bankruptcy in 1992 and is therefore liable for all the obligations of First City (an allegation that the Harry Holt Plaintiffs had not previously made in the underlying litigation). Neither of these assertions have any basis in the law or the facts.[7]

**History of Alper and Saltire;**
**Allegations of Environmental Contamination**

10.    Saltire[8] was a major industrial company that began operations in the early 1800s and was listed for much of its existence – including the entire time it is alleged to have engaged in operations that contributed to environmental contamination at the Dickson Landfill – on the New York Stock Exchange. <u>See</u> Debtor Saltire Industrial, Inc.'s Modified First Amended Disclosure Statement (the "<u>Saltire DS</u>"), Exhibit C to the Fink Decl., at 8. From approximately 1964 until March 1985, Saltire operated the Dickson Plant, where it made automotive

---

[7]    In 1992, seven years after the Dickson Plant closed and decades after the disposal of industrial waste by Saltire at the Dickson Landfill is alleged to have first occurred, Alper received a majority of the stock of Saltire's then parent, First City Industries Inc. ("<u>First City</u>") as a distribution under First City's own chapter 11 plan of reorganization in return for Alper's claims against First City. Alper thereby became the indirect parent company of First City's subsidiaries, including Saltire,[7] but Alper never merged with Saltire, never purchased all of Saltire's assets and liabilities, and never otherwise became liable for Saltire's liabilities.

[8]    Historically, Saltire has also been known as Scovill, Inc. and Scovill Manufacturing Inc.

tire valves and associated products and where TCE was used as a degreaser.[9]  The Dickson Plant ceased operations in March 1985.

11.   In 1985, Saltire was acquired by an affiliate of First City, a public company listed on the New York Stock Exchange.  Following Saltire's acquisition by First City, Saltire began a divestiture program which, by 1987, significantly reduced the size and scope of its operations but left Saltire with a number of liabilities, including alleged environmental liabilities related to the Dickson Plant.

12.   From 1985 through August 2004, Saltire worked under the auspices of state and federal environmental regulatory authorities in a multi-million dollar investigation and remediation of environmental contamination at the Dickson Plant site.  See Environmental Indicator Memorandum, dated February 18, 2005, attached as Exhibit D to Fink Decl.  In addition, according to reports commissioned by the Environmental Protection Agency, Saltire *may* have disposed of industrial waste, including TCE, at the Dickson Landfill in the 1960s and 1970s.[10]

---

[9]   Schrader Automotive Division, a division of Saltire, operated the Dickson Plant.

[10]   The Dickson Landfill opened in 1968 as an unregulated dump for the City of Dickson, Tennessee (the "City").  While it operated as a dump, several local industries allegedly disposed of waste at the site.  In 1977, the County of Dickson, Tennessee purchased the Dickson Landfill from the City for use as a sanitary landfill.  After 1977, the Dickson Landfill accepted only

13.    In 1992, seven years after the Dickson Plant closed, and <u>decades</u> after the alleged disposal of industrial waste at the Dickson Landfill first occurred, Alper became the controlling shareholder of First City through First City's then-pending prepackaged chapter 11 case.  <u>See</u> Saltire DS, Exhibit C to Fink Decl., at 17.  Accordingly, Alper became the indirect parent company of First City's subsidiaries, including Saltire. Notably, First City was not, nor did First City or Alper become, a successor in interest to Saltire, Saltire did not assign any of its current or prospective liabilities to First City or Alper, and First City and Alper did not acquire or assume any of Saltire's current or prospective liabilities by operation of law or otherwise.  Although Alper ultimately became the direct parent of Saltire, Alper had no relationship whatsoever with Saltire during the period the Dickson Plant was operating and during the period it is alleged that Saltire disposed of industrial waste generated at the Dickson Plant at the Dickson Landfill.

14.    On August 17, 2004, in part to deal with liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in this Court under chapter 11 of

---

domestic wastes and industrial wastes permitted by the Tennessee Department of Environment and Conservation Division of Solid Waste Management.

the Bankruptcy Code.[11]  On March 8, 2006, an order (the

"Confirmation Order", Exhibit E to the Fink Decl.) was entered

in Saltire's bankruptcy case confirming Saltire's Modified First

Amended Chapter 11 Plan of Liquidation (the "Saltire Plan",

Exhibit F to the Fink Decl.).  The Saltire Plan, among other

things, (i) provided that Alper would contribute $1,000,000 in

cash to the Saltire estate and release claims it held against

Saltire in excess of $2,000,000 in exchange for a general

release and waiver of any claims or causes of action Saltire's

estate may have held against Alper and (ii) canceled the

outstanding equity interests in Saltire.  The Saltire Plan

became effective on April 25, 2006.

**Objection To Claims**

**Alter Ego Claims Released**

15.   In the Harry Holt Claims, the Harry Holt

Plaintiffs assert claims for damages against Alper based on

variations of a theory that Alper is the alter ego of Saltire.

Such claims must be disallowed because any and all alter ego

claims that Saltire may have had against Alper were property of

---

[11]    See In re Saltire Industrial, Inc., Case No. 04-15389 (BRL)
(Bankr. S.D.N.Y. 2004).  In December 2004, the Harry Holt
Plaintiffs filed proofs of claim in the Saltire bankruptcy.  Each
of the proofs of claim filed by the Harry Holt Plaintiffs in the
Saltire bankruptcy (i) asserted unsecured non-priority claims in
the amount of $40,000,000, (ii) indicated that the basis for such
claims was "personal injury/wrongful death" and (iii) attached
the Complaint.

Saltire's bankruptcy estate and were released pursuant to the
Saltire Plan.  The release of Saltire's claims against Alper was
part of global settlement (the "<u>Saltire-Alper Settlement</u>"),
which came after extensive negotiations between Alper and
Saltire's Official Committee of Unsecured Creditors --
fiduciaries for all of Saltire's creditors, including the Harry
Holt Plaintiffs.  <u>See</u> Saltire Plan, Exhibit F to Fink Decl. at §
13.1 (releasing Alper from any claims that Saltire could assert
directly or that a creditor could assert derivatively on behalf
of Saltire or its estate); Confirmation Order, Exhibit E to Fink
Decl. at ¶ 18 (same).  The Court found in the Confirmation Order
that "[t]he Plan constitutes and embodies a good faith
compromise and settlement of certain disputed claims and issues
(including, but not limited to, those claims and issues
encompassed by the Saltire-Alper Settlement), which compromise
and settlement is fair, equitable and within the range of
reasonableness, is in the best interests of the Debtor, the
Estate and its creditors, and was entered into in good faith, at
arms' length and otherwise satisfies the requirements of
Bankruptcy Rule 9019."  <u>Id.</u> at ¶ GG.  The Harry Holt Plaintiffs,
despite being parties in interest in the Saltire bankruptcy
action, did not object to confirmation of the Saltire Plan or
the Saltire-Alper Settlement contained therein.

16.    Where a debtor has a prepetition cause of action,
that cause of action is property of the debtor's estate and the
debtor has the exclusive right to prosecute and settle that
action during the administration of its estate, notwithstanding
the fact that creditors or other parties may have had standing
to prosecute the action during the prepetition period.  See Koch
Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339,
1342-43 (7th Cir. 1987) (discussing In re MortgageAmerica Corp.,
714 F.2d 1266 (5th Cir. 1983)).  The Court of Appeals for the
Second Circuit has held that whether an alter ego cause of
action will be included in a debtor's estate – and so subject to
release or settlement by the debtor – depends on whether
applicable state law characterizes such an action as a creditor
remedy or a corporate right.  See St. Paul Fire & Marine Ins.
Co. v. PepsiCo Inc., 884 F.2d 688, 700 (2d Cir. 1989).  Here,
applicable state law – Delaware[12] – characterizes an alter ego
cause of action as a corporate right.  See In re Enron Corp.,
No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr.
17, 2003) (citing Murray, 876 F. Supp. at 517) ("a Delaware
court would permit a debtor corporation to assert a claim to
pierce its own corporate veil."); Pereira v. Cogan, Civ. A. No.

---

[12]    The applicable state law is the law of the state of
incorporation, or Delaware.  See In re Eagle Enter., Inc., 265
B.R. 671, 678 (E.D. Pa. 2001), citing Kalb, Voorhis & Co., 8 F.3d
at 132.

00 Civ. 619 (RWS), 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001)).

17.   Accordingly, because any claim that Alper diverted Saltire's assets in such a manner to leave Saltire grossly undercapitalized, or that First City did the same to Saltire, was indisputably property of Saltire's estate, only Saltire had the right to assert and settle an alter ego or related claim against Alper.  See Kalb, Voorhis & Co. v. American Fin'l Corp., 8 F.3d 130, 132 (2d Cir. 1993); In re Ontos, Inc., 478 F.3d 427, 430-31 (1st Cir. 2007) (trustee has exclusive right to compromise alter ego claims because they constitute property of the estate or could have been asserted by him for the benefit of all creditors, which is "consistent with the whole bankruptcy concept"); Steyr-Daimler-Puch Of America Corporation v. Pappas, 852 F.2d 132 (4th Cir. 1988) (holding that where state law of state of incorporation allowed corporation to bring alter ego action against its principals, if bankruptcy trustee, who succeeded to rights of corporate debtor, compromised such claim with the debtor's alter egos, the debtor's creditors were barred from bringing subsequent alter ego suits); Enron Corp., 2003 WL 1889040, at *3.

18.   Pursuant to the Saltire Plan and in exchange for valuable consideration, which benefited all of Saltire's creditors, Saltire released Alper from any liability that

13

Saltire could assert directly or any entity could assert derivatively or on behalf of Saltire or Saltire's estate.  <u>See</u> Saltire Plan, Exhibit F to Fink Decl., at § 13.1.  Because the Saltire estate had the exclusive right to bring an alter ego claim, the Saltire estate's release of Alper foreclosed any of Saltire's creditors from asserting claims against Alper on any alter ego theory.  Alper has been released from any alter ego claims that may have arisen including, specifically, claims such as those asserted by the Harry Holt Plaintiffs in the Complaint and the Proofs of Claim.[13]

19.    Furthermore, even if any alter ego claims Saltire may have had against Alper were not released, no alter ego claim can be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion and control over Saltire's operations as required to support an

---

[13]    The Harry Holt Claims also allege that Alper fraudulently diverted Saltire's assets, thereby leaving it "grossly undercapitalized."  To the extent that this language is an attempt to assert claims for fraudulent transfer against Alper, those claims, like the alter ego claims, belonged to Saltire and were released pursuant to the Saltire Plan.  <u>See</u> <u>In re Diepan</u>, 2007 WL 1577961 (11th Cir. 2007) (trustee settlement of fraudulent transfer claims barred creditors' state law claims against transferees because fraudulent transfer claims against third parties are property of the estate); <u>In re Ontos, Inc.</u>, 478 F.3d at 430-31 (trustee has exclusive right to compromise fraudulent transfer and alter ego claims because they constitute property of the estate or could have been asserted by him for the benefit of all creditors, which is "consistent with the whole bankruptcy concept").

argument for applying alter ego liability.  In fact, Alper did not even exist until 1992, seven years after the Dickson Plant was shuttered.

20.  Accordingly, Alper hereby requests that this Court enter an order disallowing and expunging the Proofs of Claim because they are based on a meritless and released alter ego theory.

## Alper Has No Direct Liability to Harry Holt Plaintiffs

21.  As noted above, in the Proofs of Claim, the Harry Holt Plaintiffs assert damages against Alper based solely on the alleged wrongdoing of Saltire.  Nonetheless, to the extent the Harry Holt Claims are construed to assert any damages based on any acts of Alper, such claims must fail.

22.  Any disposal by Saltire of industrial waste at the Dickson Landfill occurred during the 1960s and 1970s. Saltire ceased all operations and closed its facility at the Dickson Plant in March 1985.  At all times during the period of alleged disposal of industrial waste and in the period afterward when the Dickson Plant and Dickson Landfill were still being operated, Saltire was a public corporation.  Alper had <u>no connection</u> or relationship whatsoever to Dickson County or to Saltire before it became the indirect controlling shareholder of Saltire in <u>1992 – almost two decades after any alleged contamination of the Dickson Landfill first occurred and at</u>

15

<u>least seven years after the facilities were closed</u>.  It is, thus, not possible, as a legal or factual matter, to hold Alper responsible for Saltire's disposal of waste under any theory of liability.  Any damages that may have resulted from Saltire's alleged disposal of industrial waste at the Dickson Landfill or the Dickson Plant are not Alper's responsibility and any such claims must be disallowed.

23.    The Harry Holt Plaintiffs assert in the Proofs of Claim that Alper is a successor in interest to First City and is liable for the obligations of First City (an allegation that is not included anywhere in the Complaint).  No wrongdoing has been asserted against First City by the Harry Holt Plaintiffs in either the Complaint or the Proofs of Claim.  The Harry Holt Plaintiffs merely declare, without any support, that at the time of the First City bankruptcy filing, which occurred more than seven years after operations ceased at the Dickson Plant, First City was aware of Saltire's alleged negligent disposal of industrial waste in Dickson County.  The Harry Holt Plaintiffs fail to link Alper to any liability arising from the Dickson Plant or the Dickson Landfill.[14]

---

[14]    Regardless of the fact that the Harry Holt Plaintiffs have not stated a claim against Alper, several of their claims are simply barred by the statute of limitations.  The Complaint was filed on December 3, 2003 after the statute of limitations had run with respect to both the personal injury and property damage claims brought on behalf of at least three of the Holt Plaintiffs – Bonita, Beatrice and Harry.  The controlling statutes of

## **Harry Holt Plaintiffs Cannot Prove Claim**

24.     Even if the Court were to determine not to bar the Harry Holt Claims on their merits, the Proofs of Claim must be disallowed in the form they were submitted.  It is well settled that the claimant bears the ultimate burden of proving its claim.  See Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2d. Cir. B.A.P. 2000) ("The ultimate burden of proof always rests upon the claimant.").  As described above, the Harry Holt Plaintiffs cannot assert a claim against Alper on an alter ego or any other theory.  Accordingly, Alper hereby requests that this Court enter an order expunging the Harry Holt Claims.

---

limitation provide, respectively, that personal injury claims must be brought within one year of the accrual of the cause of action and that property damage claims must be brought within three years of the accrual of the cause of action.  See Tenn. Code Ann. §§ 28-3-104 and 28-3-105; Stone v. Hinds, 541 S.W.2d 598, 599 (Tenn. 1976).  The Holt Plaintiffs did not file their Complaint until December 3, 2003 – more than a year from each of the dates that Bonita, Beatrice and Harry allegedly discovered the illnesses they claim were caused by their exposure to toxic waste and more than three years from the date that Harry and Beatrice became aware of the alleged damage to their property. Specifically, the Complaint alleges that Bonita was diagnosed with stomach polyps in 2000, Beatrice was diagnosed with cervical polyps in September 2002, and Harry was diagnosed with prostate cancer on December 2, 2002.  These dates all occurred more than a year from the December 3, 2003 filing of the Complaint.  In addition, the latest date that Harry and Beatrice could have had actual knowledge of the alleged damage to their real property was October 20, 2000 when the Holts' well was closed due to the detection of purportedly dangerous levels of TCE.  This date occurred more than three years from the filing of the Complaint. Thus, even if Bonita, Beatrice and Harry could prove facts to support their personal injury and property damage claims and even if they could prove facts to support their contention that Alper should be liable for those claims, such claims are not timely and will not survive summary judgment.

## Notice

25.    No trustee, examiner, or creditors' committee has been appointed in Alper's chapter 11 case.  Notice of this Objection has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Dickson Plaintiffs, (iii) counsel for Schrader-Bridgeport International, Inc and ArvinMeritor, Inc., (iv) the Securities and Exchange Commission, the Internal Revenue Service, and other government agencies to the extent required by the Bankruptcy Rules and the Local Bankruptcy Rules of this Court and (v) Alper's twenty (20) largest unsecured creditors.  In light of the relief requested, Alper submits that no other or further notice need be provided.

## Waiver of Memorandum of Law

26.    Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, Alper respectfully requests that this Court waive the requirement that it file a memorandum of law in support of this Objection.  Alper reserves the right to file a memorandum of law in reply to any responses filed to this Objection.

27.    No previous application for the relief sought herein has been made to this or any other Court.  This Objection is limited to the grounds stated herein and is without prejudice

to the right of Alper to object to the Proofs of Claim on any

ground whatsoever.   Alper expressly reserves all further

substantive and/or procedural objections it may have to the

Proofs of Claim identified in this Objection.

### Conclusion

WHEREFORE, Alper respectfully requests that this Court

enter an order, in substantially the form attached hereto as

Exhibit A, disallowing and expunging the Harry Holt Claims, and

granting such other and further relief as may be just and proper.

Dated: New York, New York
       January 9, 2008        **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**


                    By:  _/s/ Luc A. Despins _____
                         Luc A. Despins (LD 5141)
                         Andrew M. Leblanc (*pro hac vice*)
                         Jessica L. Fink (JF 6399)
                         1 Chase Manhattan Plaza
                         New York, New York  10005
                         (212) 530-5000

                         Counsel for Alper Holdings USA, Inc,
                         Debtor and Debtor in Possession

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
In re:                        :    Chapter 11
                              :
ALPER HOLDINGS USA, INC.,     :    Case No. 07-12148 (BRL)
                              :
                              :
                  Debtor.     :
------------------------------x

### ORDER GRANTING OBJECTION OF ALPER HOLDINGS USA, INC. TO HARRY HOLT PLAINTIFFS' PROOFS OF CLAIM

Upon consideration of the Objection to Proofs of

Claim, dated January 9, 2008 (the "Objection"), filed by Alper

Holdings USA, Inc. ("Alper"), seeking entry of an order

disallowing and expunging certain claims set forth on Schedule A

hereto (collectively, the "Claims") pursuant to section 502 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as

amended, the "Bankruptcy Code"),and it appearing that the

disallowance and expungement of these Claims is in the best

interests of Alper, its creditors and all parties in interest;

and good and sufficient notice having been provided as set forth

in this Court's order establishing notice procedures, including

to counsel to the claimants; and it appearing that no other or

further notice need be provided; and the Court having reviewed

the Objection and having heard the statements of counsel in

support of the relief requested in the Objection at a hearing

before the Court (the "Hearing"); and the Court having

determined that the legal and factual bases set forth in the

Objection and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings heard before the

Court; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that, pursuant to section 502 of the

Bankruptcy Code, the Claims are hereby disallowed in their

entirety and for all purposes, and expunged.


Dated: New York, New York
        _____, 2008


                                    _____
                                    HONORABLE BURTON R. LIFLAND
                                    UNITED STATES BANKRUPTCY JUDGE

# SCHEDULE  A

| Claim Number | Claimant(s) | Type of Claim | Amount |
|---|---|---|---|
| 35 | Sheila Holt-Orsted | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 36 | Jasmine Orsted | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 37 | O'Brian Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 38 | Brandon Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 39 | David Brown | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 40 | Demetrius Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 41 | Harry Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 42 | Beatrice Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 43 | Bianca Bentley | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 44 | Bonita Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |
| 45 | Patrick Holt | Property Damage and Personal Damage | Unliquidated – Approximately $40 million |