**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

ALPER HOLDINGS USA, et al.

Debtors.

Chapter: 11

Case No.: 07-12148 (BRL)
Jointly Administered

**MEMORANDUM DECISION AND ORDER GRANTING OBJECTION OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM (CLAIM NOS. 20 AND 21) FILED BY FLAKE PLAINTIFFS**

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and expunging (the "Objection") claim numbers 20 and 21 (the "Flake Claims") filed by Cathy and Ray Flake (together, the "Flake Plaintiffs"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Flake Plaintiffs oppose the Objection asserting that the Flake Claims have been sufficiently pled in their corresponding proofs of claim to put Alper on notice of the claims filed against it. For the reasons set forth below and at oral argument, the Court finds Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Flake Claims are disallowed.

## BACKGROUND

### History of Alper and Saltire

The Flake Claims arise in connection with groundwater contamination and environmental problems that arose in the mid-1980's in Dickson County, Tennessee, that were allegedly caused, in part, by Saltire. From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the "Dickson Plant") where it made automotive tire valves and associated products and where Trichloroethyleme ("TCE") was used as a degreaser. The Dickson Plant ceased operations in March 1985. *See* Objection, at ¶12.

The existence of potential environmental problems including contamination of groundwater in Dickson County has been widely known since at least the mid-1980s. From 1985 through August 2004, Saltire worked under the auspices of state and federal environmental regulatory authorities in a multi-million dollar investigation and remediation of environmental contamination at the Dickson Plant site. *See Id.*, at ¶¶ 12-13. Despite the well-publicized contamination, in 2002, the Flake Plaintiffs purchased property within 8 miles of the Dickson Plant for use as a *water bottling facility*. *Id.* at ¶ 19 (emphasis supplied).

In 1992, seven years after the Dickson Plant closed and decades after the alleged disposal of industrial wastes in Dickson County first occurred, Alper became the controlling shareholder of an entity known as First City Industries Inc. ("First City") (an incidental and indirect parent of Saltire, through First City's then-pending chapter 11 case).[1] Although Alper ultimately became the direct parent of Saltire, Alper had no relationship with Saltire during the period the Dickson Plant was operating and during the period Saltire allegedly disposed of industrial waste in Dickson County.[2] As an incidental parent holding company of Saltire, Alper did not become a

---

1 As a creditor of First City, Alper received shares of stock as a stock for debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing (the "Hearing"), at 25-26.

2 Since 2003, numerous parties have filed lawsuits against Alper, among others, for alleged personal injury and property damage claims related to the environmental contamination in Dickson, Tennessee (collectively, the "Tennessee Actions"). The Tennessee Actions include three actions known as the "Dickson Actions": (1) Flake v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc. f/k/a Schrader Automotive, Inc.; Alper Holdings USA, Inc.; Tomkins PLC; the City; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Flake Action"), which forms the basis of the Flake Claims; (2) Armstrong v. Saltire Industrial, Inc. f/k/a Scovill, Inc.; Schrader-Bridgeport International, Inc f/k/a Schrader Automotive, Inc.; Alper Holdings U.S.A., Inc.; Tomkins PLC; ArvinMeritor, Inc.; William Andrews; Lewis Edward Kilmarx and John Doe(s) 1-10 (the "Armstrong Action"); and (3) Adkins v. Schrader-Bridgeport International, Inc.; Alper Holdings USA, Inc.; ArvinMeritor, Inc; the City; the County; William Andrews; Lewis Kilmarx and John Does (the "Adkins Action" and collectively with the Armstrong Action and the Flake Action, the "Dickson Actions"). The other Tennessee Actions are: (1) Harry Holt, et al. v. Scovill, Inc., n/k/a Saltire Industrial, Inc.,

successor in interest to Saltire. *See Id.* at ¶ 13. On August 17, 2004, in part to deal with liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.[3]

On or about March 7, 2007, plaintiffs in the Dickson Actions, including the Flake Plaintiffs, settled with Saltire for the aggregate amount of $1.5 million. In addition, on or about October 13, 2006, the Flake Plaintiffs entered into a settlement and release agreement with two of the other defendants to the Flake Action, the City of Dickson, Tennessee (the "City") and the County of Dickson, Tennessee (the "County"), whereby the Dickson Plaintiffs agreed to release the City and County – the entities that owned and operated the Dickson Landfill – from their claim in return for, among other things, 75% of any recoveries that the City and County received from Saltire.[4] *See Id.*, at ¶¶ 14-15.

**Alper Chapter 11 Case and**
**<u>the Flake Claims</u>**

On July 13, 2007, Alper filed for relief under chapter 11 of the Bankruptcy Code. On or about September 19, 2007, the Flake Plaintiffs filed the "contingent, unliquidated, and disputed" Flake Claims asserting *See Id.*, at ¶ 9. The fourth amended complaint (the "Complaint") filed by the Flake Plaintiffs in the Flake Action accompanied each of the Flake Claims.[5] Among other

---

Alper Holdings USA, Inc., Ebbtide Corporation and the City and County of Dickson, Tennessee (the "Holt Action"); (2) Lavenia Holt, et al. v. Scovill, Inc. et al (the "Lavenia Holt Action"); and (3) Dunbar v. Saltire Industrial, f/k/a Scovill, Inc. et al., pending in the Circuit Court of Dickson County, Tennessee (the "Dunbar Action").

[3] *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

[4] The City dropped its claim against Saltire, and the Flake Plaintiffs effectively received no recovery from the City. The County's claim against Saltire continues to be litigated, but Alper asserts that the Flake Plaintiffs' share of any recovery the County receives from Saltire will be de minimis.

[5] In addition to the Complaint, the Flake Plaintiffs included the following paragraph in the supporting documents attached to the Flake Claims:

things, the Complaint, which the Flake Plaintiffs relied upon entirely to support their claims, alleged that the Flake Plaintiffs suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or monitor the disposal of the TCE at all locations throughout Dickson." *See* Complaint, at ¶¶ 31-36. However, nowhere in their Complaint do the Flake Plaintiffs allege specific negligent acts or causes of action against Alper; rather, they rely on six broadly pled causes of action asserted generally against the "defendants." *See Id.*, at ¶¶ 37-71.

On November 14, 2007, Alper filed the Objection alleging that the Flake Claims were both baseless and facially deficient based on the following: (a) Alper had no connection or relationship to Dickson County or the Dickson Plant before it became the indirect controlling shareholder of Saltire in 1992 – at least two decades after any alleged contamination first occurred and at least seven years after the Dickson plant closed; (b) by their own admission, the Flake Plaintiffs did not perform any investigation or due diligence with respect to the water quality and contamination, which had been widely reported beginning in the mid-1980's; and (c) to the extent that the Flake Plaintiffs were attempting to assert claims against Alper on a theory that Alper was the alter ego of Saltire, such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released pursuant to Saltire's plan of reorganization (the "Saltire Plan") and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson

---

> Creditor's property and personal damage claim arises from contamination by hazardous waste including Trichloroethyleme ("TCE"), and industrial solvent used at a manufacturing facility in Dickson, Tennessee and is based on the independent acts and/or omissions of Alper Holdings, USA, Inc. in connection with said contamination.

*See* Supporting Document Attachment to Flake Claims.

Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims. *See* Objection, at ¶¶ 16-21.

On December 27, 2007, the Flake Plaintiffs responded to the Objection (the "Response") claiming that the Flake Claims should not be dismissed because *inter alia* (a) the Flake Plaintiffs' proofs of claim contained sufficient allegations to support their claims against Alper, and (b) the Flake Plaintiffs' alter ego claims against Alper could not have been released by Saltire during Saltire's bankruptcy because the Flake Plaintiff's alter ego claims were not property of Saltire's bankruptcy estate. *See* Response, at pp. 9-21.

**DISCUSSION**

It is well settled that a proof of claim executed and filed in accordance with the Federal Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim. *In re Musicland Holding Corp.*, 362 B.R. 644, 651-652 (Bankr. S.D.N.Y. 2007); *In re Castaldo*, No. 05-36349, 2006 WL 3531459, *3 (Bankr. S.D.N.Y. Dec. 7, 2006). The filing of a proof of claim, however, is only the beginning of the Court's inquiry.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid .... [and] the ... burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, *15 (Bankr. S.D.N.Y. Aug. 22, 2007) (citing *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)); *In re Lehning*, No. 05-

16245, 2007 WL 1200820, *3 (Bankr. N.D.N.Y Apr. 20, 2007); *In re MarketXT Holdings Corp.*, No. 04-12078, 2007 WL 680763, *4 (Bankr. S.D.N.Y. Mar. 1, 2007). The Court finds as a matter of law that the Flake Plaintiffs have failed to meet this burden.

In the Response, the Flake Plaintiffs contend that either (a) Alper is directly liable to the Flake Plaintiffs for negligently causing damage to their persons and/or property, or in the alternative that (b) Alper is indirectly liable as a successor or alter ego of Saltire for negligently causing damage to their persons and/or property. The Courts finds, however, that as a matter of law, Alper had no connection with the original contamination that occurred in Dickson County or Saltire's efforts to remedy that contamination and, therefore, Alper is not liable for damages stemming from those actions.

**Alper Has No Direct Liability to the Flake Plaintiffs**

To establish a direct cause of action against Alper, the Flake Plaintiffs must prove that Alper owed a duty to the Flake Plaintiffs, that the duty was breached, and that the breach was the cause in fact and proximate cause of the Flake Plaintiffs' injury or loss. *See Ham v. Hospital of Morristown, Inc*., 917 F. Supp. 531, 534 (E.D. Tenn. 1995) ("The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff."). The alleged disposal of industrial waste and TCE in Dickson County occurred during the 1960s and 1970s, and Saltire ceased all operations and closed the Dickson Plant in March 1985. Alper, however, had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed. *See* Objection, at ¶¶ 16-17.

Rather than set forth any specific factual allegations with respect to Alper, the Flake Plaintiffs attempt to hide behind a generic complaint directed at 21 different defendants without

alleging any specific liability to the Flake Plaintiffs owed on the part of Alper. Such generic, flypaper pleadings will not suffice. *Robbins v. Cloutier*, 121 Fed. Appx. 423, 425 (2d Cir. 2005) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; [d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."); *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir.2002)); *C.f. Apace Communications, Ltd. v. Burke*, 07-CV-6151L, 2007 WL 4125232, *6 (W.D.N.Y. Nov. 16, 2007) (citing *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient"); *Ballew v. Black*, 06-CV-70-HRW, 2006 WL 3193379, *4 (E.D. Ky. Nov. 1, 2006) ("When a complaint (such as the one filed in this case) merely lists multiple defendants and then describes at length the facts generally without naming the specific defendants involved in each event, and without setting forth with particularity which acts by each defendant caused each constitutional deprivation, the complaint is insufficient.").

Even if the Flake Plaintiffs had alleged specific liability on the part of Alper, it was Saltire, not Alper, who operated the manufacturing facility in Dickson County. "As a general rule, under Tennessee law, persons do not have a duty to control the conduct of other persons to prevent them from causing harm to others." *McConkey v. McGhan Med. Corp.*, 144 F. Supp. 958 (E.D. Tenn. 2000); *Cooley v. Unique Vacations, Inc.*, Civ. A. 04-141-KSF, 2005 WL 2757249, *2 (E.D. Ky. Oct. 25, 2005) ("As a general rule, an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another."); *Ham*, 917 F. Supp. at 534 ("In Tennessee, while all persons have a duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others,

they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own. Thus, as a general rule in Tennessee, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others.") (internal citations omitted). The only connection that the Flake Plaintiffs have been able to point to between Alper and Saltire's remediation efforts in Dickson County was (i) a management agreement (the "Management Agreement") entered into between Saltire and Alper in 1995 whereby Alper agreed to oversee certain environmental matters and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs assert was involved in the clean-up efforts in Dickson County. As more thoroughly set forth below, the existence of the Management Agreement and a common employee are insufficient to impose even indirect liable on Alper. Accordingly, as it was Saltire and not Alper who operated the Dickson Plant and presumably contaminated the groundwater in Dickson County, Alper owed no duty to the Flake Plaintiffs.

At the Hearing, the Flake Plaintiffs argued, in the alternative, that Alper assumed a duty to the Flake Plaintiffs by voluntarily undertaking to oversee or control Saltire's remediation efforts in Dickson County. *See* Transcript, at pp. 22-31. Under Tennessee law, "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all…." *Nidiffer v. Clinchfield R.R. Co.*, 600 S.W.2d 242, 246 (Tenn. App. 1980) (citing *Glanzer v. Shepard*, 233 N.Y. 236 (1922)). To prevail, however, on a claim under the so-called "Good Samaritan" rule, one must demonstrate reliance on the undertaking to the detriment of the plaintiff.[6] *See Lemar v. U.S.*, 580 F. Supp. 37, 40 (D. Tenn. 1984) ("The

---

6 In Tennessee, the "Good Samaritan" rule is embodied in Section 324A of the Restatements, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

essential element for recovery under § 324A and the 'Good Samaritan' rule is reliance."). The Flake Plaintiffs, however, have set forth no facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County to support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *See* Transcript of Hearing, at p. 36. Moreover, a fundamental premise of the Flake Plaintiffs' claim is that they were unaware of environmental contamination and subsequent remediation in Dickson County. As the Flake Plaintiffs were allegedly unaware of any contamination or remediation efforts, they could not, simultaneously, have relied on Alper's alleged control of that remediation. *See, e.g., Howell v. U.S.*, 932 F.2d 915, 919 (11th Cir. 1991) ("To establish 'good samaritan' liability, therefore, appellants must show reliance… the required reliance must be actual though not necessarily specific…at a minimum, [this] requires knowledge that the allegedly negligent inspection occurred before reliance can be found and 'good samaritan' liability can attach."); *see also* Transcript of Hearing, at 28-29. Accordingly, Alper did not assume a duty of care to the Flake Plaintiffs.

**Alper Has No Indirect Liability to the Flake Plaintiffs**

The Flake Plaintiffs argue, in the alternative, that Alper was indirectly liable for the negligent acts or omissions of Saltire in its remediation efforts on a theory of alter ego or piercing the corporate veil. Response, at p. 17. As noted above, to support their alter ego

---

> necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

claims, the Flake Plaintiffs point to the existence of (i) the Management Agreement between Alper and Saltire, which provided, *inter alia*, that Alper would oversee certain environmental remediation for Saltire, and (ii) an Alper employee (who was simultaneously an officer of Saltire) who the Flake Plaintiffs contend was involved in the clean-up activities in Dickson County. *See* Reply of Alper Holdings USA, Inc. to Response of Ray and Cathy Flake to Objection Filed by Alper Holdings USA, Inc. to Proofs of Claim Nos. 20 and 21, at ¶¶ 8-11.

Courts are very reluctant to disregard the corporate form.[7] *See Power Integrations, Inc. v. Fairchild Semiconductor Intern.*, Inc., 233 F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form 'bears the burden of proving that there are substantial reasons for doing so.'"). Under Delaware law, a corporate veil will not be pierced absent a showing of "fraud or something like it." *Mobile Oil Corp.*, 718 F. Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted). Moreover, as set forth by the Supreme Court in *United States v. Bestfoods*:

---

7 Under New York law, the law of the state of incorporation controls the analysis of alter ego claims. *See Kalb v. Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003).

> It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary. That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders. Nor will a duplication of some or all of the directors or executive officers be fatal." Although this respect for corporate distinctions when the subsidiary is a polluter has been severely criticized in the literature, nothing in CERCLA purports to reject this bedrock principle, and against this venerable common-law backdrop, the congressional silence is audible.

524 U.S. 51, 61-62 (1998) (internal citations omitted*); See also Velez v. Novartis Pharmaceuticals Corp.,* 244 F.R.D. 243, 254 (S.D.N.Y. 2007) ("A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability."); *In re King*, 305 B.R. 152, 166 (Bankr. S.D.N.Y. 2004) (citing 18 Am. Jur.2d *Corporations* § 57 (2003)) (the fact that a corporation owns all or the majority of the stock of another "does not in itself destroy the identity of the latter as a distinct legal entity...and the fact that stockholders, officers or directors in two corporations may be the same persons does not operate to destroy the legal identify of either corporation**….**").

Clearly, special circumstances do not exist here that would justify the extraordinary remedy of piercing the corporate veil. The Flake Plaintiffs have not alleged fraud or "something like it" on the part of Alper, which would be necessary to impose indirect liability. The fact that Saltire and Alper had a common employee is insufficient to hold Alper liable for Saltire's alleged contamination or remediation. *See Bestfoods*, 524 U.S. at 61-62; *Velez,* 244 F.R.D. at 254; *In re King*, 305 B.R. at 166. While the Flake Plaintiffs point to certain deposition excerpts to support their contention that the employee in question, Nicholas Bauer, was an employee of

Alper only, it is clear from the record that not only was Mr. Bauer an officer of Saltire, specifically vice president of environmental affairs, *see* Transcript of Hearing, at 30, but that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County. *Bestfoods*, 524 U.S. at 69 ("[C]ourts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary,...") (internal quotations omitted). Similarly, the mere existence of the Management Agreement alone is also insufficient to impose such liability where the Flake Plaintiffs have not alleged any facts to support their claim that Alper participated (negligently or otherwise) in the remediation. *United States v. Newmont, Ltd.*, No. CV-05-020-JLQ, 2007 WL 2405040 (E.D. Wash. Aug. 17, 2007). Regardless of whether the Flake Plaintiffs' alter ego claims were released under Saltire's plan of reorganization as Alper contends, the Court finds that no such claims may be asserted against Alper as a matter of law.

**CONCLUSION**

For the reasons set forth above and at the hearing, the Court finds that Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Flake Claims are disallowed and expunged.

It is so ordered.

Dated: New York, New York
January 15, 2008

/s/ Burton R. Lifland
The Honorable Burton R. Lifland
United States Bankruptcy Judge