**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ALPER HOLDINGS USA, et al.<br><br>         Debtors. | Chapter: 11<br><br>Case No.: 07-12148 (BRL)<br>     Jointly Administered |

## MEMORANDUM DECISION AND ORDER GRANTING OBJECTIONS OF ALPER HOLDINGS USA, INC. TO PROOFS OF CLAIM FILED BY (i) ARMSTRONG PLAINTIFFS AND (ii) HOLT PLAINTIFFS

Alper Holdings USA, Inc. ("Alper"), the debtor, seeks entry of an order disallowing and expunging (i) claim numbers 12 and 13 (the "Armstrong Claims") filed by the Armstrong Plaintiffs[1] (the "Armstrong Objection") and (ii) claim numbers 35 through 45 (the "Holt Claims," and together with the Armstrong Claims, the "Claims") filed by the Holt Plaintiffs[2] (the "Holt Objection," and together with the Armstrong Objection, the "Objections"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Armstrong Plaintiffs and the Holt Plaintiffs oppose the Objections.

For the reasons set forth below and at oral argument, and in accordance with this Court's previous Memorandum Decision on Objection of Alper to Proofs of Claim (Claim Nos. 29 and 21) filed by Flake Plaintiffs dated January 15, 2008 (the "Flake Opinion"), the Court finds Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire Industrial, Inc.'s ("Saltire") alleged contamination or remediation in Dickson County, Tennessee. Therefore, the Claims are disallowed.

---

[1]  The Armstrong Plaintiffs include Charlotte Armstrong and Jon Armstrong (together, the "Armstrong Plaintiffs").

[2]  The Harry Holt Plaintiffs include Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Holt Plaintiffs").

## BACKGROUND

This Court has previously discussed the facts and circumstances preceding Alper's bankruptcy at length in the Flake Opinion, including a discussion of Saltire and the contamination in Dickson County, Tennessee, and the Court generally refers all parties to the Flake Opinion.  Briefly, the Armstrong Claims and Holt Claims, much like other claims this Court has had the opportunity to address in these proceedings, both arise in connection with groundwater contamination and environmental problems that arose as far back as the mid-1960's in Dickson County, Tennessee, that were allegedly caused, in part, by Saltire (an incidental and indirect subsidiary of Alper).  From approximately 1964 until March 1985, Saltire operated a plant in Dickson County (the "Dickson Plant") where it made automotive tire valves and associated products and where trichloroethylene ("TCE") was used as a degreaser.  The Dickson Plant ceased operations in March 1985.  Since filing for bankruptcy on July 13, 2007, numerous parties have filed claims against Alper based on, among other things, Saltire's alleged contamination in Dickson County.

### The Flake Opinion

On January 15, 2008, this Court issued the aforementioned Flake Opinion, which granted Alper's objection to certain claims asserted by Cathy and Ray Flake (together, the "Flake Plaintiffs") arising out of claims similar to those presently at issue for personal and property damages based upon the alleged contamination in Dickson County.  *In re Alper Holdings USA*, 07-12148 (BRL), 2008 WL 160203 (Bankr. S.D.N.Y. Jan. 15, 2008).  In that instance, the Flake Plaintiffs claimed (the "Flake Claims") to have suffered personal and property damage due to the intentional or negligent failing of Alper (along with 20 other defendants) to "adequately monitor, control, supervise and/or maintain the disposal of the TCE at all locations throughout Dickson."

17584135\V-1

As is also presently the case, the Flake Plaintiffs alleged theories of both direct and indirect liability against Alper.

This Court granted Alper's objection and disallowed the Flake Claims based in large part upon the facts that (i) Alper's ownership interest in Saltire was not only indirect but also incidental as Alper only became the controlling shareholder of Saltire in connection with the reorganization of Saltire's parent First City Industries, Inc.[3] ("First City") and (ii) Alper had no connection or relationship to Saltire or Dickson County prior to obtaining an indirect ownership interest in Saltire in 1992 – nearly two decades after the alleged contamination first occurred and at least seven years after the Dickson Plant was closed. Specifically, this Court found that Alper had no direct liability to the Flake Plaintiffs because (a) it was Saltire and not Alper that operated the Dickson Plant and, therefore, Alper owed no duty of care to the Flake Plaintiffs, and (b) the Flake Plaintiffs failed to set forth any facts that Alper actually participated in or oversaw Saltire's remediation in Dickson County that would support a finding that Alper may have assumed a duty of care to the Flake Plaintiffs. *Id.* at *4-5.

This Court also found that Alper had no indirect liability to the Flake Plaintiffs on either a theory of alter ego or piercing the corporate veil because neither the existence of a management agreement between Alper and Saltire nor a common employee between the parent and subsidiary would justify the extraordinary remedy of piercing the corporate veil as argued by the Flake Plaintiffs. *Id.* at *5-6. In so holding, the Court clearly held that "Alper cannot be held liable, directly or indirectly, for claims arising out of or relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee." *Id*. at *7. With that introduction in mind, the Court now proceeds with the claims presently at issue.

---

[3]     As a creditor of First City, Alper received shares of stock as a stock-for-debt distribution in the reorganized First City on account of its allowed claim pursuant to First City's plan of reorganization. *See* Transcript of January 8, 2008 Hearing, at 25-26.

## THE ARMSTRONG CLAIMS

On or about September 19, 2007, the Armstrong Plaintiffs filed their original proofs of claim (the "Original Proofs of Claim") asserting contingent, unliquidated, and disputed property damage claims against Alper.  The Original Proofs of Claim <u>were based entirely upon a complaint</u> filed by the Armstrong Plaintiffs against Alper (along with 18 other named defendants) on or about April 8, 2004 (the "Armstrong Complaint"), in which the Armstrong Plaintiffs claim to have suffered a "diminution" in the value of certain real property as a direct result of the "defendants" alleged contamination in Dickson County.  The Armstrong Complaint alleged that Alper was liable for the property damages asserted based upon (a) Alper's own "direct acts and omissions" and (b) a theory that Alper was Saltire's successor-in-interest.  While the Armstrong Complaint alleged that Alper was liable for its own direct acts, the complaint failed to detail with any specificity what those direct acts might actually entail; rather, the Armstrong Plaintiffs relied on broadly pled causes of action asserted generally against the "defendants."

On February 6, 2008, however, the Armstrong Plaintiffs, undoubtedly daunted by the Flake Plaintiffs' holding, amended the Original Proofs of Claims (the "Amended Proofs of Claim").[4]  In the Amended Proofs of Claim, the Armstrong Plaintiffs contend for the first time that they were not alleging that Alper caused or contributed to the initial contamination in Dickson County, but rather, that Alper assumed control of the remediation efforts in Dickson

---

[4]    Alper has objected to the filing of the Amended Proofs of Claim contending that the filing of the Amended Proofs of Claim some five months after the expiration of the September 21, 2007 bar date is "an impermissible amendment to the Original Armstrong Claims because they are based on a set of facts and theory of liability completely different than those asserted in the Original Armstrong Claims and there is no equitable reason to permit the late-filed claims."  Objection of Alper Holdings USA to Amendment of Proofs of Claim (Claim Nos. 12 and 13) Filed by Armstrong Plaintiffs dated February 20, 2008, at ¶ 3.

County and conducted such remediation in a negligent manner.  The pleadings attached to the

Amended Proofs of Claim sought to build upon the theory first introduced by the Flake Plaintiffs

that Alper controlled the remediation in Dickson County (and assumed a duty to the Armstrong

Plaintiffs) by further alleging that Nicholas Bauer, the same common employee of Saltire and

Alper previously discussed in the Flake Opinion, oversaw the remediation in Dickson County on

behalf of Alper.[5]  More precisely, the Amended Proofs of Claim allege that Mr. Bauer: (a)

considered himself an employee of Alper and not Saltire, (b) was hired by Alper for the sole

purpose of overseeing the remediation in Dickson County, (c) represented himself as an Alper

official who had responsibility for environmental matters at Saltire, and (d) operated from an

office in Virginia, a jurisdiction where only Alper and not Saltire was authorized to do business.

Alper objects to the Armstrong Claims arguing that they (as reformulated in the

Amended Proofs of Claims) are fundamentally the same negligent remediation claims that the

Court previously dispensed with in the Flake Opinion.  Additionally, Alper contends that even if

all of the allegations regarding Mr. Bauer are taken as true, the Flake Plaintiffs have still failed to

"allege a plausible basis for liability against Alper."  Alper further contends that any claims for

alter ego or successor liability must be disallowed because such claims were property of Saltire's

bankruptcy estate and were released under Saltire's plan of reorganization (the "Saltire Plan").

In contrast, the Armstrong Plaintiffs claim that the Armstrong Claims should not be

dismissed because *inter alia* (a) the Armstrong Plaintiffs' proofs of claim contained sufficient

allegations to survive what they contend is a motion to dismiss, and (b) the Armstrong Plaintiffs'

---

[5]    The Flake Plaintiffs previously alleged that Mr. Bauer was not an employee of Saltire at all, but rather was hired solely by Alper to deal with the remediation in Dickson County. The Court, however, previously held that not only was Mr. Bauer clearly an employee of Saltire (specifically, vice president of environmental affairs), but also that that he was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation in Dickson County. *In re Alper Holdings,* 2008 WL 160203, at *6.

alter ego claims against Alper could not have been released under the Saltire Plan because the

Armstrong Plaintiffs' alter ego claims were not property of the estate.

As previously discussed in the Flake Opinion, the fact that a parent company and its

subsidiary share common employees is insufficient to impose liability on the part of the parent

for acts of the subsidiary.  *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely

appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that

fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.")

(internal quotations omitted); *see In re Alper Holdings*, 2008 WL 160203, at *5-6.  Regarding

the roles of common or overlapping employees, the United States Supreme Court in *United*

*States v. Bestfoods* stated that "courts generally presume that the directors are wearing their

'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," absent a situation

where a common employee might "depart so far from the norms of parental influence exercised

through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the

subsidiary in operating the facility."  524 U.S. at 69-71; *see also In re Parmalat Securities*

*Litigation*, 501 F. Supp. 2d 560, 588 (S.D.N.Y. 2007).

Like the Flake Plaintiffs before them, the Armstrong Plaintiffs have failed to allege any

facts that would justify imposing liability on the part of Alper.  Alper's ownership interest in

Saltire came about merely as a result of a debt to equity swap in First City's then pending chapter

11 bankruptcy – and the Court will not make use of this incidental ownership interest to hold

Alper indirectly liable for events that predated Alper's ownership interest in Saltire by nearly two

decades.  *See e.g., Da Silva v. Kinsho Intern. Corp.*, 210 F. Supp. 2d 241, 244 (S.D.N.Y. 2000)

("This Court agrees that a parent company should not lightly be held responsible for the acts of

its subsidiaries absent proof that the parent was involved in the particular circumstances giving

rise to the litigation.").  Most notably, as Alper suggests in its reply, even if all of the allegations

- 6 -

regarding Mr. Bauer and Alper are taken as true, the conduct alleged still falls well short of the "depart[ing] so far from the norms of parental influence" standard set forth by the Supreme Court in *Bestfoods* as the Armstrong Plaintiffs have failed to allege any acts by Mr. Bauer that would overcome the legal presumption that he was acting on behalf of Alper and not Saltire.

Accordingly, as the conduct alleged is insufficient to overcome the legal presumption that Mr. Bauer was acting on behalf of Saltire and not Alper, the Court sees no reason to part ways with the reasoning and rationale previously set forth in the Flake Opinion.  *See, e.g., In re Manhattan Invest. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) ("The law of the case is a discretionary doctrine, providing 'that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  While the law of the case is "a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided," nevertheless, the situations justifying reconsideration are generally limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal citations omitted); *641 Ave. of Americas Ltd. Partnership v. 641 Associates, Ltd.*, 189 B.R. 583, 588 (S.D.N.Y. 1995) ("[U]nder the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.").  The Court finds no basis to impose a duty on the part of Alper – direct, indirect, assumed or otherwise – and therefore, the Armstrong Claims are disallowed.

## THE HOLT CLAIMS

Similar to the Armstrong Claims and the Flake Claims before them, the Holt Claims, which are based upon a separate complaint filed on or about December 3, 2003 (the "Holt Complaint"), assert various claims for both personal and property damage based upon, *inter alia*, Saltire's negligent contamination at the Dickson Plant and surrounding area.  Unlike the

Armstrong Plaintiffs, however, the Holt Plaintiffs allege damages based entirely upon injuries caused by the original contamination in Dickson County and not by any subsequent remediation or negligence.  Accordingly, the Holt Plaintiffs' allegations as they pertain to Alper are based entirely on a theory of alter ego liability.  In particular, the Holt Plaintiffs assert that Alper is liable as the alter ego of Saltire because (a) Alper was not merely an indirect or incidental parent of Saltire as had been previously contended, but rather was formed for the sole purpose of acquiring First City during its then pending chapter 11 proceeding, (b) Alper dominated and controlled the management and direction of Saltire to a much greater extent than previously suggested, and (c) Alper and First City diverted assets away from Saltire, which left Saltire grossly undercapitalized and eventually necessitated Saltire filing for bankruptcy protection under chapter 11 of the Bankruptcy Code in August 2004.[6]

Alper objects to the Holt Plaintiffs' alter ego and successor liability claims charging that such claims must be disallowed because (i) alter ego claims that Saltire may have had against Alper were property of the estate and were released under the Saltire Plan and (ii) even if such claims were not released pursuant to the Saltire Plan, no alter ego claims could be asserted against Alper because Saltire was a publicly traded company during the entire time that it operated the Dickson Plant and Alper did not exercise any dominion or control over Saltire's operations as required to support such claims.

In response, the Holt Plaintiffs contend that their alter ego claims against Alper were not property of the estate but rather were nondebtor third party claims that Saltire was unable to release under the Saltire Plan because *inter alia* (a) Tennessee law and not Delaware should control the analysis of alter ego claims and under Tennessee law, a debtor does not have the ability to pierce its own corporate veil, and (b) the claims asserted by the Holt Plaintiffs in the

---

[6]       *In re Saltire Industrial, Inc.*, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

Holt Complaint are personal to the Holt Plaintiffs and could not have been brought by any

creditor of Alper.

As previously set forth in the Flake Opinion, courts are very reluctant to disregard the

corporate form.[7]  *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 233

F.R.D. 143, 145 (D. Del. 2005) ("[T]he separate and distinct corporate identities of a parent and

its subsidiary are not readily disregarded, except in rare circumstances justifying the application

of the alter ego doctrine to pierce the corporate veil of the subsidiary."); *Sears, Roebuck & Co. v.

Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990) ("It is only the exceptional case where a court

will disregard the corporate form…"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260,

270 (D. Del. 1989) ("Since it is the exceptional instance where a court will disregard the

corporate form, the party who wishes the court to disregard that form 'bears the burden of

proving that there are substantial reasons for doing so.'").  Under Delaware law, a corporate veil

will not be pierced absent a showing of "fraud or something like it."  *Mobile Oil Corp.*, 718 F.

Supp. at 268; *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) ("[T]o

pierce the corporate veil based on an agency or 'alter ego' theory, the corporation must be a

sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations omitted).

Under Delaware law, an alter ego cause of action constitutes a corporate right.  *See, e.g.*,

*In re Enron Corp.*, 2003 WL 1889040, at *3 ("Based on the fact that Delaware law allows a

---

[7]      While the Holt Plaintiffs suggest otherwise, it is clear under New York law that the law
of the state of incorporation controls the analysis of alter ego claims and, accordingly,
Delaware law controls our analysis.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d
Cir. 1995) ("[Under New York choice of law principles, the law of the state of
incorporation determines when the corporate form will be disregarded and liability will
be imposed on shareholders.") (internal quotations omitted); *Kalb v. Voorhis & Co. v.
Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of
state law whose primary purpose is to insulate shareholders from legal liability, the state
of incorporation has the greater interest in determining when and if that insulation is to be
stripped away."); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1889040, at
*3 (Bankr. S.D.N.Y. Apr. 17, 2003).

subsidiary to maintain an action against a corporate parent, a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil"); *Pereira v. Cogan*, 00-CIV-619, 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001) ("It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporation fiction, or an involuntary tort creditor. However piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors..... [Therefore] it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.") *citing Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n. 20 (3d Cir. 1994); *Murray v. Miner*, 876 F. Supp. 512, 516 -17 (S.D.N.Y. 1995) ("One can only conclude that for purposes of applying federal bankruptcy law, Delaware courts would permit a debtor corporation to 'assert[ ] an alter ego claim to pierce its own corporate veil….'") (internal citations omitted). The law permits a debtor to pierce its own corporate veil because "[a]llowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis." *In re Enron Corp.*, 2003 WL 1889040, at *4.  As the Second Circuit stated in *Kalb, Voorhis & Co. v. American Fin. Corporation*, 8 F.3d 130 (2d Cir. 1993):

> [G]ranting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly; the alter ego action is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.

*Id*. at 132.

"Where a claim is generalized, with no particularized injury stemming from it and where the claim may be brought by any creditor, the trustee or debtor-in-possession is the appropriate

- 10 -

party to assert the claim and creditors are subject to the outcome of the action brought by the

trustee or debtor-in-possession." *In re Enron Corp.*, 2003 WL 1889040, at \*4; *see also Murray*

*v. Miner*, 876 F. Supp. 512,  516 (S.D.N.Y. 1995) (An alter ego claim "belongs to the trustee if

(1) under governing state law the debtor could have asserted an alter ego claim to pierce its own

corporate veil, and (2) plaintiffs' claim is a general one, of the type that could be brought by any

creditor of the debtor.").

　　　　While the Holt Plaintiffs have further expounded upon the successor liability and alter

ego theories previously dispensed with in the Flake Opinion,[8] the Court is not persuaded.

Among other things, the Holt Plaintiffs assert that (a) Alper and Saltire operated as a single

economic unit maintaining the same office space and over lapping employees, and (b) Alper and

First City diverted assets away from Saltire and sold of many of Saltire's most profitable

businesses, leaving it grossly undercapitalized and forcing Saltire to file for bankruptcy.  Clearly,

claims of gross undercapitalization and fraudulent transfer such as those averred in the Holt

Complaint are of a generalized nature and do not allege a "particularized injury" specific to the

Holt Plaintiffs only and not Saltire's body of creditors at large.  While this Court previously did

not address whether Saltire's alter ego claims were property of the estate, *see In re Alper*

*Holdings*, 2008 WL 160203, at \* 6, it is clear based upon the conduct presently alleged that such

alter ego claims were in fact property of Saltire's bankruptcy estate and, accordingly, that those

alter ego claims were released under section 13.1 of the Saltire Plan.[9]  Accordingly, the Holt

Claims are disallowed.

---

[8]　　　　The same, however, cannot be said of the Armstrong Plaintiffs, where counsel for the
Armstrong Plaintiffs – who previously served as counsel for the Flake Plaintiffs –
essentially restated the very same arguments dismissed by the Court in the Flake Opinion.

[9]　　　　Section 13.1(b) of the Saltire Plan states, in pertinent part:

## CONCLUSION

For the reasons set forth above and at the hearing, and for the reasons set forth in the

Flake Opinion, the Court finds that Alper cannot be held liable, directly or indirectly, for claims

arising out of or relating to Saltire's alleged contamination or remediation in Dickson County,

Tennessee.  Therefore, the Claims are disallowed and expunged.

IT IS SO ORDERED.

Dated:  New York, New York
        February 25, 2008

_/s/ Burton R. Lifland_____
The Honorable Burton R. Lifland
United States Bankruptcy Judge

---

The Debtor . . . acquits and forever discharges Alper . . . from any
and all actions, causes of action, [and] liabilities . . . in any way
relating to the Debtor . . . that the Debtor could assert directly or
any Holder of a Claim . . . could assert derivatively or on behalf of
the Debtor or its estate . . . . Notwithstanding the foregoing, the
above release does not release claims any nondebtor third party
may hold against any of the Released Parties, except to the extent
any nondebtor third party is asserting a claim that is property of the
Debtor's Estate.

17584135\V-1